IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| H.B. WILLIAMSON CO., | ) | |
| d/b/a Williamson-Asia, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 14–cv–0575–MJR–PMF |
| | ) | |
| ILL-EAGLE ENTERPRISES, LTD, and | ) | |
| DARRYL SGROI, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM & ORDER

**REAGAN, Chief Judge:**

The underlying allegations in this diversity contract case stem from a business dispute between two companies involved in the design and manufacture of framed art and wall décor.  Ill-Eagle Enterprises ("Ill-Eagle"), a New Jersey corporation, used H.B. Williamson Co. ("Williamson") as a point-of-contact for manufacturing Ill-Eagle-designed products in China.  Based on samples provided by Ill-Eagle, Williamson would mass produce home décor for sale in retail stores like Bed Bath and Beyond ("BBB").

According to the Complaint (Doc. 2-1), Ill-Eagle failed to perform its contractual obligations when it defaulted on an over $318,000 balance due to Williamson.  The Complaint also targets Ill-Eagle's President Darryl Sgroi, who signed a personal Guaranty (complete with forum selection and choice-of-law clauses) for all Ill-Eagle's obligations.  Ill-Eagle denies it owes Williamson any

money, and has filed a counterclaim alleging Williamson's breach (or breaches on several orders) caused Ill-Eagle to incur monetary damages.

The case comes before the Court on two motions: (1) Defendant Sgroi has moved for dismissal, arguing the Guaranty he signed was invalid (and that the Court accordingly has no personal jurisdiction over him); (2) Williamson has moved to dismiss, arguing Illinois' "New Business Rule" and the lack of certainty regarding Ill-Eagle's lost profits doom Ill-Eagle's counterclaim.  The motions are ripe, and the Court takes them in turn.

### THIS COURT HAS PERSONAL JURISDICTION OVER SGROI

"Personal jurisdiction" refers to a court's power over the parties.  ***KM Enters., Inc. v. Global Traffic Techs., Inc.***, 725 F.3d 718, 723 (7th Cir. 2013).  A court without personal jurisdiction over a defendant is "wholly without power to proceed to an adjudication binding on that defendant, regardless of the specific reason such jurisdiction is lacking."  ***Philos Techs., Inc. v. Philos & D, Inc.***, 645 F.3d 851, 855 **(7th Cir. 2011) (internal quotation marks and citation omitted).**

The instant parties do not dispute that personal jurisdiction hinges entirely on the Guaranty signed by Sgroi.  That is, all sides cede that if the Guaranty is valid, Sgroi is subject to the jurisdiction of courts in Illinois; if the Guaranty is unenforceable or invalid, he is not.  The Guaranty provides in part:

> I, Darryl Sgroi, for and in consideration of [Williamson's] extending credit at my request to Ill-Eagle … hereby personally and unconditionally guarantee and promise to pay [Williamson] any obligations of Ill-Eagle to [Williamson] … This Personal Guaranty guarantees all extensions of credit including, but not limited to,

> increases to the credit limit of … Ill-Eagle.  "Obligations"
> include … all extensions of credit to Ill-Eagle, all
> transactions between Ill-Eagle and [Williamson] … and
> any other amounts, charges, expenses, interest, fees, costs
> owed by Ill-Eagle to [Williamson].

Three evidentiary submissions inform the controversy.   In a sworn declaration, Defendant Sgroi tells that Ill-Eagle and Williamson had a business relationship from 2008 onward, in which Williamson would (1) ensure conformation to Ill-Eagle design requirements and (2) deliver product to a port in Ningbo, China. Ill-Eagle had 60-days to pay Williamson *once the goods were shipped*.   A 2013 product line (the "7 Piece Art Set") bound for Bed Bath & Beyond ("BBB") suffered delays due to several quality control problems.   Williamson delivered the 7 Piece Art Set to BBB's shipping company, but to comply with BBB's documentation requirements, Ill-Eagle had to obtain a Forwarder's Cargo Receipt ("FCR"). Williamson, which possessed the FCR, withheld it until July 30, 2013, when Sgroi (Ill-Eagle's president) signed the Personal Guaranty at issue here.   Sgroi claims that, "[in order to obtain the FCR's to secure the release of Ill-Eagle's goods I signed the 'personal guaranty' even though I knew we were legally entitled to the goods because Williamson left me with no other choice.'" (Doc. 11-1, 3).   Failure to deliver the goods by the next day would have led to "extraordinary penalties and losses from" BBB.   (*Id.*).

Williamson's side of the story is, unsurprisingly, different.   In a signed affidavit, Williamson's president, Terry Schaubert, claims that, as of July 30, 2013, Ill-Eagle had defaulted on several open accounts with Williamson totaling

$288,047.72.  Those accounts were between 10 and 194 days in arrears, and—due to Ill-Eagle's inability to pay its debts as they became due—Williamson decided to "suspend full performance" of the 7 Piece Art Set job.  (Doc. 17, 17).  According to Schaubert, "Williamson demanded a personal guaranty from [Sgroi] for all extensions of credit and obligations owed," and "Williamson provided subsequent credit extensions to Ill-Eagle in reliance on [the Guaranty]," including over $374,000 for the Seven Piece set and over $50,000 for a line called "Mirror Serenity."  (*Id*).  Schaubert further swears Williamson "chose not to immediately bring a collections suit against Ill-Eagle for its defaulted accounts, because of its reliance on" Sgroi's Guaranty.  (*Id*).

Appended to Defendant's reply brief[1] is a second declaration from Sgroi. (Doc. 20-2, 2–3).  Sgroi swears Ill-Eagle was not insolvent as of July 30, 2013, and hedges that "[t]o the extent we may have been beyond terms on other projects…these issues arose because of massive quality control problems on those other projects."  (Doc. 20-2, 2).  Notably, Sgroi does *not* challenge Schaubert's assertion that the Guaranty was the basis for extensions of obligations owed, for subsequent credit extensions, and for choosing not to initiate collections suits against Ill-Eagle at that time.  (*Id*).

---

[1] The Reply itself is targeted by a Motion to Strike, but (as discussed below) there are no disputed facts material to whether there was consideration for (or duress undermining) the forum selection clause, so the Court need not address the Motion to Strike.  *See also Gittings v. Tredegar Corp.*, 2010 WL 4930998, at *1 (N.D. Ill. Nov. 29, 2010) (motions to strike factual submissions "pretty much a waste of time and effort, because [the] Court is of course aware of the applicable rules and will not consider noncomplying materials."); *Redwood v. Dobson*, 476 F.3d 462, 471 (7th Cir. 2007) (the rules "provide a means to contest the accuracy of the other side's statement of facts: that means is a brief … not a motion to strike.").

### 1. Standard under Rule 12(b)(2)

Federal Rule of Civil Procedure 12(b)(2) permits a defendant to challenge whether it is subject to personal jurisdiction. FED. R. CIV. P. 12(b). Once a defendant makes the challenge, the plaintiff bears the burden of establishing personal jurisdiction. *Northern Grain Mktg., LLC v. Greving*, 743 F.3d 487, 491 (7th Cir. 2014) (citing *Purdue Res. Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003)). Often personal jurisdiction is closely linked to the nature and merit of the asserted claim, but that does not mean that the judge will take the plaintiff's word about what happened. *Szabo v. Bridgeport Machs., Inc.*, 249 F.3d 672, 676 (7th Cir. 2001). The district court must decide whether facts material to personal jurisdiction are in dispute. *Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 713 (7th Cir. 2002). If so, an evidentiary hearing is held, and the plaintiff must establish jurisdiction by a preponderance of the evidence. *Id.*; *Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 799 (7th Cir. 2014). If not, the Court evaluates personal jurisdiction based on written submissions from the parties, and a plaintiff must simply make out a *prima facie* case for personal jurisdiction. *Cent. States, Se. & Sw. Areas Pension Fund. v. Phencorp Reinsurance Co., Inc.*, 440 F.3d 870, 877–78 (7th Cir. 2006); *Nelson v. Park Indus.*, 717 F.2d 1120, 1123 (7th Cir. 1983).

### 2. Forum Selection Clauses & Illinois Contract Law

In days of yore, courts were generally hostile to forum selection clauses. *IFC Credit Corp. v. Aliano Bros. Gen. Contractors, Inc.*, 437 F.3d 606, 609–10 (7th Cir.

2006).  That "outmoded judicial hostility" has been buried, and forum selection clauses are now—generally—enforceable.  *Id.* (citing, *inter alia*, *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1 (1972)).  A potential defendant who signs a forum selection clause is deemed to have forfeited objections to personal jurisdiction or venue.  *Id.*  Courts should treat a forum selection clause "basically like any other contractual provision and hence enforce it unless it is subject to any of the sorts of infirmity that justify a court's refusing to enforce a contract."  *Id.* at 610.

The validity of a forum selection clause "depends on the law of the jurisdiction whose rules will govern the rest of the dispute."  *IFC Credit Corp. v. United Bus. & Indus. Fed. Credit Union*, 512 F.3d 989, 991 (7th Cir. 2008) (citing *Abbott Labs. V. Takeda Pharm. Co.*, 476 F.3d 421 (7th Cir. 2007)).  Illinois contract law therefore controls whether this Court has personal jurisdiction over Defendant Sgroi.

Sgroi argues that, in signing the Guaranty (which contained the forum selection clause), there was no consideration and, thus, no enforceable contract exists.  Alternatively, he asserts he signed the Guaranty under duress—a defense to an otherwise enforceable contract.  *See Pierce v. Atchison, Topeka & Santa Fe Ry.*, 65 F.3d 562, 569 (7th Cir. 1995) (applying Illinois law).

### A. There was Consideration for the Forum Selection Clause

In contract law, consideration—a necessary element to an enforceable contract—means a bargained-for exchange of promises or performance.  *Tower Investors, LLC v. 111 East Chestnut Consultants, Inc.*, 864 N.E.2d 927, 937 (Ill.

App. Ct. 2007).   Consideration consists of some detriment to the offeror, some benefit to the offeree, or some bargained-for exchange between them.  *Thomas v. Guardsmark*, 381 F.3d 701, 705 (7th Cir. 2004) (quoting *Doyle v. Holy Cross Hosp.*, 708 N.E.2d 1140, 1145 (Ill. 1999)).  A promise to forgo legal action is consideration, but new consideration is necessary to support a guaranty executed after an underlying obligation has been entered into.  *Tower Investors*, 864 N.E.2d at 937. The consideration flowing to the guarantor need not render a personal benefit to him; rather, a promise based on consideration to benefit a third party is sufficient to bind the guarantor.  *Id.*

In *Tower Investors*, the Appellate Court of Illinois analyzed a case similar to the one at bar.  A third-party company signed a guaranty on behalf of a consulting firm, agreeing to reimburse an investment firm for the principal of a loan in exchange for the investment firm's promise not to prosecute any claims against the consultants.  *Id.* at 932.  The guarantor challenged the agreement for a lack of consideration.  *Id.* at 938.  Though some new consideration was needed to support the guaranty, the Appellate Court held: "Because forbearance is valid consideration, [the investment firm's] forbearance from exercising its right to take legal action against [the consultants] constitute[d] adequate consideration to support [the] guaranty of [the consultants'] preexisting debt.  *Id.* (citing *F.H. Prince & Co. v. Towers Fin. Corp.*, 656 N.E.2d 142, 148 (Ill. App. Ct. 1995)).

Likewise, here there was sufficient consideration to support Sgroi's Guaranty.  Sgroi signed the Guaranty on behalf of Ill-Eagle in exchange for

Williamson *not* bringing suit against Ill-Eagle, and for associated extensions on obligations already owed. That forbearance from exercising its right to take legal action constituted adequate consideration to support the Guaranty. ***See First Nat'l Bank v. Chapman***, 366 N.E.2d 937, 940–41 (Ill. App. Ct. 1977) (quoting 1 CORBIN ON CONTRACTS, § 144, at 625 (1963) ("Forbearance by a creditor to sue his principal debtor is ample consideration for a promise by a third person to guarantee payment of the debt, if such actual forbearance was expressly or impliedly requested by the guarantor as the agreed equivalent for his promise."). Sgroi's attempt to draw the sting by blaming Williamson for any outstanding debts does little to help his case. *See Tower Investors*, 864 N.E.2d at 938 ("Where a party's compromise of its claim is made in good faith, even if that claim is ultimately shown to be invalid, the forbearance is nevertheless sufficient consideration to support a contract."); *Bank of Am., N.A. v. 180 N. State Retail LLC*, 928 N.E.2d 42, 56 (Ill. App. Ct. 2010) ("oral discussions between the parties … cannot be the basis for an argument that the lender failed to abide by a duty of good faith and fair dealing.").

And even if that forbearance were insufficient, the Guaranty was executed contemporaneously with the extension of *new* credit. The 60-day credit terms extended to Ill-Eagle by Williamson on the 7 Piece Art Set were *only* initiated upon shipment from China, which hinged on delivery of the FCR to Ill-Eagle. Had the FCR not been delivered and the goods not been released, Ill-Eagle would have owed Williamson nothing. Presumably that would have been bad for all parties due to imminent penalties and losses, but escaping those consequences shows there *was*

consideration, rather than the opposite.  *See IFC Credit Corp. v. Aliano Bros. Gen. Contractors, Inc.*, 437 F.3d 606, 610 (7th Cir. 2006) ("Parties would not agree to the inclusion of [a forum selection clause] in their contracts if they thought it would put them at a disadvantage … *unless they were compensated for assuming that risk*.").

In sum, there was consideration for the Guaranty signed by Defendant Sgroi.

### B.  No Duress

Sgroi's duress argument fares no better.  Economic duress, also known as business compulsion, is an affirmative defense which releases the party signing under duress from all contractual obligations.  *Bank of Am., N.A. v. 108 N. State Retail LLC*, 928 N.E.2d 42, 57 (Ill. App. Ct. 2010).  Duress only occurs where one is induced by a wrongful act or threat to make a contract under circumstances that deprive one of the existence of free will.  *Id.*  Economic duress cannot be predicated on an allegation that consent to an agreement was obtained through hard bargaining positions or financial pressures.  *Id.*

In *Bank of America v. 108 N. State Retail*, the Appellate Court held there was no economic duress where real estate developers (who had violated the terms of a previous agreement) signed letter agreements in exchange for the bank's agreement to continue to disburse funds.  *Bank of Am.*, 928 N.E.2d at 46–47. Though the developers certainly "felt financial pressure" to enter the letter agreements, and the entire project "would have collapsed" without them, those factors were insufficient to establish duress.  *Id.* at 57.  *Accord Resolution Trust Corp. v. Ruggiero*, 977 F.2d 309, 314 (7th Cir. 1992) (applying Illinois law) ("Driving

a hard bargain is not a wrongful act" sufficient to establish economic duress.  "A borrower cannot charge a lender with economic duress where the pressures on the borrower are the result of his own business decisions and economic conditions.").

This case is analogous to *Bank of America*.  Though Sgroi certainly faced dire economic circumstances had he not signed the Guaranty—the Seven Piece job (and perhaps others) would have "collapsed"—Williamson's hard bargaining was not a wrongful act.  *See Bank of Am.*, 928 N.E.2d at 57.  As in *Bank of America*, the "collapse" would have negative consequences for both lender and borrower; Williamson's attempt to protect itself from Ill-Eagle's potential inability to make due on its promises, though, did not constitute economic duress.

The Personal Guaranty signed by Defendant Sgroi is, accordingly, a valid and enforceable contract.  Sgroi forfeited any objection to the personal jurisdiction, and so his motion (**Doc. 11**) is **DENIED**.

### MOTION TO DISMISS ILL-EAGLE'S COUNTERCLAIM: DENIED

In its counterclaims, Ill-Eagle alleges that Williamson, by breaching its oral contract, caused over $495,000 in lost profits.  Those lost profits stemmed from problems with the "Accordion Dual Art" program, the "UV X-Ray Art" program, and the aforementioned 7-Piece Art Set program.  Williamson offers two reasons to dismiss Ill-Eagle's counterclaim: first, that the counterclaim is barred by Illinois' so-called "New Business Rule;" secondly, that any lost profits alleged by Ill-Eagle are too speculative to support an award in their favor.  Neither argument suffices to dismiss Ill-Eagle's counterclaims.

### 1. *Rule 12(b)(6) Motion to Dismiss Standard*

Federal Rule of Civil Procedure 12(b)(6) governs motions to dismiss for failure to state a claim.  In 2007 and 2009, respectively, the United States Supreme Court handed down two decisions delineating the district court's proper role on a Rule 12(b)(6) motion: *Bell Atlantic v. Twombly,* 550 U.S. 544, 570 (2007), and *Ashcroft v. Iqbal,* 556 U.S. 662, 663-664 (2009).  In deciding a 12(b)(6) motion, the court's task is to determine whether the complaint includes "enough facts to state a claim to relief that is plausible on its face." **Khorrami v. Rolince**, 539 F.3d 782, 788 (7th Cir. 2008) (quoting *Twombly,* 550 U.S. at 570).  *Accord Burke v. 401 N. Wabash Venture, LLC,* 714 F.3d 501, 504 (7th Cir. 2013).

A complaint need not contain detailed factual allegations, **Scott v. Chuhak & Tecson, P.C.,** 725 F.3d 772, 782 (7th Cir. 2013), but it must "go beyond mere labels and conclusions" and contain "enough to raise a right to relief above the speculative level," **G&S Holdings, LLC v. Cont'l Cas. Co.,** 697 F.3d 534, 537–38 (7th Cir. 2012). Courts "must still approach motions under Rule 12(b)(6) by 'construing the complaint in the light most favorable to the plaintiff, accepting as true all well-pleaded facts alleged, and drawing all possible inferences in her favor.'" **Hecker v. Deere & Co.**, 556 F.3d 575, 580 (7th Cir. 2009), *cert. denied,* 558 U.S. 1148 (2010) (quoting **Tamayo v. Blagoyevich**, 526 F.3d 1074, 1081 (7th Cir. 2008)).

The United States Court of Appeals for the Seventh Circuit has explained that *Iqbal* clarified *Twombly*'s two working principles:

> First, although the complaint's factual allegations are accepted as true at the pleading stage, allegations in the form of legal conclusions are

11

insufficient to survive a Rule 12(b)(6) motion. Accordingly, "[t]hreadbare recitals of the elements of the cause of action, supported by mere conclusory statements, do not suffice." Second, the plausibility standard calls for a "context-specific" inquiry that requires the court "to draw on its judicial experience and common sense."

*McReynolds v. Merrill Lynch & Co., Inc.,* 695 F.3d 873, 885 (7th Cir. 2012) (internal citations omitted).

So this Court reviews Ill-Eagle's counterclaim, taking as true all well-pled factual allegations. After excising any allegations not accepted as true (legal conclusions), the Court must decide whether the remaining factual allegations plausibly suggest that Ill-Eagle is entitled to relief. *McCauley v. City of Chicago,* 671 F.3d 611, 616 (7th Cir. 2011). A Rule 12(b)(6) dismissal motion "must be decided solely on the face of the complaint and any attachments that accompanied its filing." *Miller v. Herman,* 600 F.3d 726, 733 (7th Cir. 2010) (citing FED. R. CIV. P. 10(c) and *Segal v. Geisha NYC LLC,* 517 F.3d 501, 504–05 (7th Cir. 2008)).

### 2. *Illinois Law: Certainty of Profits & the New Business Rule*

Broadly speaking, all American jurisdictions require the party seeking recovery of lost profits must establish those lost profits "with reasonable certainty." *TAS Distrib. Co. v. Cummins Engine Co.,* 491 F.3d 625, 631 (7th Cir. 2007). In Illinois, the aggrieved party must "establish a reasonable basis for the computation of" the damages sustained. *Id.* at 632 (applying Illinois law and citing, *inter alia,* *Ellens v. Chi. Area Office Fed. Credit Union,* 576 N.E.2d 263, 267 (Ill. App. Ct. 1991)). Damages in Illinois must be proven to a "reasonable degree of certainty," and must have been "reasonably within the contemplation of the defaulting party at

the time the contract was entered into." *Id.* at 632 (citing *Milex Prods., Inc. v. Alra Labs., Inc.*, 603 N.E.2d 1226, 1235 (Ill. App. Ct. 1992)).   Expert testimony is sometimes considered in establishing lost profits, but it is not required.   *TAS Distrib.*, 491 F.3d at 634.   Neither is "mathematical certainty" necessary to prove lost profits.  *Id.*

A related rule—the "New Business Rule"—bars recovery of the "expected profits of a new commercial business" because they are considered too speculative and remote to permit recovery.  *Id.* at 633.  *Accord SK Hand Tool Corp. v Dresser Indus.*, 672 N.E.2d 341, 348 (Ill. App. Ct. 1996) (**"Illinois courts have long held as a general rule that while profits lost due to business interruption or tortious interference with a contract may be recovered, the business must have been established before the interruption so that the evidence of lost profits is not speculative."**).  Illinois courts extend the New Business Rule to new products (not just new businesses), but allow for the introduction of evidence

Generally, the question of damages is one of fact, left to a jury rather than the court.  *SK Hand Tool*, 672 N.E.2d at 348.  Courts have shown reluctance to hold asserted damages speculative (or not) before allowing discovery on the matter.  *VDF Futureceuticals, Inc. v. Lewis*, No. 13-cv-0407, 2014 U.S. Dist. LEXIS 86866, at *23 (N.D. Ill. June 25, 2014).

### 3.  *Analysis: Ill-Eagle's Counterclaim Survives*

It would be premature to dismiss Ill-Eagle's counterclaim before the parties have an opportunity to bolster their arguments with discovery.

On a procedural level, the cases invoked by Williamson are easily distinguishable from the case at bar.  None of those appellate opinions analyzed a case that was dismissed via 12(b)(6).  Instead, both the appellate panels (and by extension the trial courts before them) had ample factual records to scrutinize under the lens of the New Business (and broader "reasonable degree of certainty" rule).  Unlike this case—where the parties have presented no actual evidence—Williamson's purported support comes from cases decided at summary judgment or later.  *See TAS Distrib. Co. v. Cummins Engine Co.*, 491 F.3d 625 (7th Cir. 2007) **(summary judgment)**; *Stuart Park Assocs. Ltd. P'Ship v. Ameritech Pension Trust*, 51 F.3d 1319, 1328 (7th Cir. 1995) **(jury verdict)**; *Malatesta v. Leichter*, 542 N.E.2d 768 (Ill. App. Ct. 1989) **(jury verdict)**; *Milex Prods., Inc. v. Alra Labs., Inc.*, 603 N.E.2d 1226 (Ill. App. Ct. 1992) **(bench trial)**; *Smart Mktg. Grp. V. Publications Intern. Ltd.*, 624 F.3d 824 (7th Cir. 2010) **(jury trial)**.  And in Illinois, the nuances of a damages finding are generally left to a jury.  *SK Hand Tool*, 672 N.E.2d at 348.  It would abuse this Court's discretion to unmoor a dispositive decision not only from a jury's hands, much less to wrest from the parties an opportunity to discover and present a full evidentiary record.

Even overlooking the need to generate a fulsome factual record here, the substance of Williamson's cited caselaw is far from convincing.  Williamson's

primary support comes from *TAS Distributing*, where the Seventh Circuit acknowledged that Illinois' New Business Rule applies to new products which create potential new business. ***TAS Distrib.*, 591 F.3d at 634.** But the *TAS* panel cited to *Milex Products* for that proposition, and in *Milex* the Appellate Court of Illinois held that a contracting party *did* show enough specific evidence to demonstrate the existence of an established market sufficient to prove damages. ***Id.* at 634–35 (citing *Milex*, 603 N.E.2d 1226, 1236 (Ill. App. Ct. 1992)).**

Here, Ill-Eagle has pled facts that, if supported by the evidence, will likewise show an established market for its goods: it has alleged an over-five-year relationship among Williamson, Ill-Eagle, and customers like Bed Bath and Beyond. Should Ill-Eagle's evidence prove persuasive, it could—as in *Milex*—lead a jury to conclude that proof of lost profits was based upon a reasonable degree of certainty.

In short, dismissing Ill-Eagle's counterclaim would require construing the counterclaim in a light most favorable to Williamson, in direct contravention of the Rule 12(b)(6) standard. ***See Hecker v. Deere & Co.*, 556 F.3d 575, 580 (7th Cir. 2009).** Even assuming otherwise, ruling in Williamson's favor would be both premature and would require a strained reading of the (purportedly) relevant caselaw brought to bear by Williamson. Williamson's Motion to Dismiss Ill-Eagle's counterclaim (**Doc. 15**) is **DENIED.**

CONCLUSION

For the reasons explained above, Defendant Sgroi's Motion to Dismiss (Doc. 11) is DENIED, and the Motion to Strike Sgroi's Reply (Doc. 24) is MOOT.  Plaintiff Williamson's Motion to Dismiss Ill-Eagle's counterclaim (Doc. 15) is also DENIED.

Though encouraged that some discovery delays were due to settlement negotiations, the Court nevertheless DENIES (Doc. 29) the uncontested January motion to continue various deadlines (including the trial month).  Should the parties wish to move the discovery deadline (currently 3/13/2015), they may make another motion to Magistrate Judge Frazier.  But the trial setting was assigned long ago: other civil trials have been carefully and tightly scheduled around it, all in anticipation of inevitable criminal trials (with attendant constitutional and Speedy Trial implications).  Should the parties wish to consent to trial before Judge Frazier, who enjoys a more flexible docket and can generally accommodate continuance requests for agreed trial dates, they may do so.  No adverse consequences will attach, of course, to a decision not to consent—the undersigned remains unaware of such matters unless and until all parties consent to magistrate judge jurisdiction.


**IT IS SO ORDERED.**
**DATE:** <u>February 25, 2015</u>                    <u>s/ *Michael J. Reagan*</u>
                                                                       **MICHAEL J. REAGAN**
                                                                       CHIEF JUDGE
                                                                       UNITED STATES DISTRICT COURT